FILED
2012 Dec-04  PM 12:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND LEE WEEMES, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 12-J-0976-NE |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social Security<br>Administration, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the record. This court has jurisdiction pursuant to 42 U.S.C. § 405. Plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

## Procedural Background

Plaintiff, Raymond Lee Weemes, brings this action pursuant to the provisions of Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405, seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits and supplemental security income. Plaintiff protectively filed for Supplemental Security Income benefits and Disability Insurance benefits on December 3, 2009, alleging an inability to work beginning November 23, 2009 (R.

1, 99, 153-157, & 146-152 respectively), due to problems related to post traumatic stress disorder (PTSD), traumatic brain injury, temporal partial seizures, migraine headaches, high blood pressure, back injury, bilateral knee injury, hemorrhoids, and high cholesterol (R. 182).  The administrative law judge ("ALJ") denied plaintiff's application on July 26, 2011 (R. 14–24).  The Appeals Council denied his request for review on January 26, 2012 (R. 1–3).  The ALJ's decision thus became the final order of the Commissioner.  *See* 42 U.S.C. § 405(g).

## Factual Background

Plaintiff was born May 20, 1980, (R. 98), and received his GED (R. 58). Plaintiff entered military service March 31, 2000 (R. 303, 715) and was medically discharged from service on September 27, 2006 (R. 303).  Plaintiff has previously worked as a military policeman, insurance investigator, security guard, and bouncer (R. 169-77, 183).  He last worked as an insurance investigator in November 2009 (R. 197).  Plaintiff alleged he became disabled as of November 23, 2009, because of PTSD, traumatic brain injury, temporal partial seizures, migraine headaches, high blood pressure, back injury, bilateral knee injury, hemorrhoids, and high cholesterol (R. 182).

According to plaintiff, he can only lift approximately 15 pounds on a repetitive basis (R. 62). Plaintiff reports that physical assistance is needed at times to walk, get out of bed, or get up from a seated position (R. 285). Plaintiff has used a cane to walk for approximately one year (R. 48). His pain is about 6 out of 10 on a daily basis but prescription pain medication (oxycodone) lowers it to about a 3 out of 10 (R. 48-50). Plaintiff states that the pain increases when he moves around. Plaintiff carries an ipad that he uses to write down tasks (R. 50). Plaintiff says he will forget what he is doing without the notebook (R. 50). Plaintiff is unable to remember to take his medication on his own; however, his wife ensures he takes his medication (R. 50). Plaintiff further states that he has black-out periods in which he remains responsive but has no recollection (R. 50, 231). These periods have lasted up to 4 hours in length (R. 231).

Plaintiff's last employment ended shortly after he had a Post-Traumatic Stress Disorder (PTSD) episode while on the job (R. 60). His employer placed him on restrictive duty and then separated him from employment (*Id.*).

On a daily basis, plaintiff showers, eats, watches TV, and takes naps (R. 268). He gets up around 11 a.m. and goes to bed after 8 p.m (R. 69). Plaintiff has trouble staying awake during the day (R. 69). On May 5, 2011, plaintiff's medications were one-half tablet of Amlodipine Besylate 10mg per day for blood pressure, one 25mg Atenolol tablet daily for heart rate and blood pressure, four Carbazamine 200mg

3

tablets daily for seizures and mood stabilization, one tablet of Gemfibrozil daily for cholesterol, a Lidocaine 5% patch daily for pain, lubricating ointment applied to each eye daily at bedtime, Methocarbamol 750mg tablet taken three times daily for pain, two Oxycodone 5mg & Acetaminophen 325mg tablets taken three times daily for pain, Plyvinyl drops in eyes twice a day, one-half Pravastatin 80mg tablet daily for cholesterol, two Prozosin HCL 2mg capsules every night at bedtime, two Sertraline HCL 100mg tablets every morning, 3 to 4 Temzepam 15 mg capsules every night for insomnia, Trazadone 50mg at bedtime for sleep, and Ketorolac 10mg tablet every six hours for pain (R. 721-722).

Plaintiff's medical records from the relevant period reflect that he was seen for back pain multiple times.  Plaintiff was first seen for back pain on November 24, 2006 (R. 542).  On September 4, 2009, A lumbar MRI scan revealed a posterior disc bulge at the L5-S1 with superimposed central posterior disc protrusion not touching the thecal sac (R. 471, 632).  There was no evidence of neural compromise (*Id.*).  The record shows that plaintiff was taking 10mg of Ketorolac every six hours and 1500mg of Methocarbamol every six hours for the back pain in September of 2009 (R. 655).  By November 5, 2009, patient was reporting chronic back pain rated a 7 out of 10 at the time of appointment and up to a 10 out of 10 during the previous week (R. 555)

4

while continuing the 10mg of Ketorolac every six hours and 1500mg of Methocarbamol every six hours (R. 557).

Plaintiff has a history of traumatic brain injury (TBI) (R. 485). Plaintiff has reported episodes of seizures. On January 22, 2009, Dr. Hogan's treatment notes indicate that plaintiff was compliant with medication, under stress due to financial difficulties and his work, and having trouble sleeping (R. 697). At that time, plaintiff's Global Assessment of Functioning was a 55 (R. 698). Dr. Hogan noted that plaintiff was under increased stress and had an increase in irritability on April 17, 2009 (R. 688). Dr. Hogan's notes state that plaintiff was not experiencing hallucinations or suicidal ideation (*Id.*). Dr. Hogan chose to increase plaintiff's dosage of Zoloft (Sertraline) to 150mg from 100mg daily (*Id.*). Dr. Hogan notes plaintiff reported increased depressive symptoms and olfactory hallucinations on July 27, 2009 (R. 680). On August 6, 2009 plaintiff's wife contacted Dr. Hogan to report plaintiff had a flashback (R. 675). On September 29, 2009, Dr. Megan Keyes, clinical psychologist, noted plaintiff had problems related to occupational functioning including decreased concentration (R. 647). Dr. Keyes noted plaintiff reported he was assigned to work at home after suffering a flash back when stopped by a police officer for speeding (R. 647). Dr. Keyes noted that plaintiff reported suicidal and homicidal ideation, that plaintiff suffered intense psychological distress at exposure

5

to internal or external cues, and plaintiff suffered markedly diminished interest or participation in significant activities (R. 645-646). Plaintiff reported olfactory hallucinations, difficulty recalling recent conversations and activities, memory lapses, and difficulty sleeping to Dr. Keyes (R. 644-645). Dr. Keyes noted plaintiff's psychosocial functioning was severely impaired and lowered plaintiff's GAF to 49 (R. 643, 647-648).

The record indicates plaintiff was prescribed Carbamazepine (Tegretol) 200mg twice a day by Dr. Hogan on July 15, 2009 after reporting times for which he had no memory, frequent deja vu, and olfactory hallucinations (R. 680). Plaintiff underwent testing on September 28, 2009, through October 2, 2009, consisting of a long-term electroencephalogram and video monitoring (R. 467-469). The test results were normal with no evidence of seizure activity (R. 468-470). The medical records indicate plaintiff's episodes were "most likely related to his post-traumatic stress disorder and that he did not have epilepsy" (R. 469). Plaintiff's records indicate that he reported episodes of olfactory hallucinations such as a burnt smell (R. 573, 628). These hallucinations sometimes precede or follow his seizures (R. 645). Plaintiff also reported visual disturbances, blurred vision and a history of migraines (*Id.*). Dr. MacGregor, Neurologist, noted on October 2, 2009, that plaintiff "presented with episodes of 'blanking out' for minutes to hours over the last 1-2 years" although these

episodes were likely non-epileptic (R. 573).   Dr. MacGregor continued the medication Carbamazepine 200mg with an increased dose to three times a day after plaintiff's electroencephalogram (R. 470, 573).   On October 19, 2009, Dr. Hogan provided plaintiff with a letter restricting him to working from home (R. 559-561). Plaintiff continued to report memory lapses on November 9, 2009 (R. 549).   On May 5, 2011, plaintiff reported to his treating physician, Dr. Hogan, that he is substantially worse and continuing to experience episodes of amnesia (R. 721).   Plaintiff further reported, suicidal thoughts, that his wife must remind him to bathe, his wife monitors his eating and medication, and a family member is with him at all times (*Id.*).   At the time of that appointment plaintiff was taking four Carbamazepine tablets per day for seizures and mood stabilization (*Id.*).

Plaintiff was originally awarded a 30% permanent disability because of post traumatic stress disorder by the Veterans Administration Medical Center (R. 714-716).   At the time of the award for permanent disability, Plaintiff's Physical Evaluation Board stated that plaintiff was "not able to work with and near others" and that he had "occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks" (R. 715).   This award was made prior to the alleged onset date of disability contained in plaintiff's application for benefits – November 23, 2009.

By October 21, 2010, plaintiff's post traumatic stress disorder and mood disorder had deteriorated to the point that the V.A. awarded plaintiff a 50% service connected disability based on post traumatic stress disorder and mood disorder (R. 717-720).  The Physical Evaluation Board disability description noted that plaintiff has impaired judgment and "continues to experience significant occupation limitations despite psychotropic medication and outpatient treatment" (R. 718).  Plaintiff was rated as having "definite social/industrial impairment" (*Id.*).

Plaintiff saw Dr. O'Hanlon at the V.A. psychiatry clinic in Birmingham, AL, on May 5, 2011 (R. 721-723).  Plaintiff reported that he was "substantially worse" and that his wife "is his memory" as she monitors his medications and helps him remember to eat (R. 721).  Plaintiff reported suicidal ideation and continued to endorse episodes of amnesia (*Id.*).  Plaintiff also reported that his flashbacks had increased (*Id.*).  During 2011, according to plaintiff, the Veterans Administration awarded plaintiff a 70% permanent disability based on post traumatic stress disorder and mood disorder  (R. 45, 304).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *See Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.

1987).  If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy.  *See id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Bloodsworth*, 703 F.2d at 1239.

This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987); *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). No presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims.  *See Brown v. Sullivan*, 921 F.2d 1233, 1235-36 (11th Cir.

9

1991); *Corneliuis v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  Furthermore, the Commissioner's "failure to . . . provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145–46.  When making a disability determination, the Commissioner must, absent good cause to the contrary, accord substantial or considerable weight to the treating physician's opinion.  *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988); *Walker*, 826 F.2d at 1000.

## Legal Analysis

In this case, the ALJ found that plaintiff has the severe impairments of "posttraumatic stress disorder and a mood disorder" (R. 16).  She then denied plaintiff benefits, finding that plaintiff's impairments or combination of impairments do not "meet[] or medically equal[] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. 17).  In so finding, the ALJ found that plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked limitation and 'repeated' episodes of decompensation" that satisfy the "paragraph B" criteria of Listing 12.04 or Listing 12.06 (R. 19).  The ALJ found that plaintiff has:

> the residual functional capacity to perform a full range of work at
> all exertion levels but with the following limitations:  He can never
> climb ladders, ropes or scaffolds.  He should avoid all exposure to
> industrial hazards including working at unprotected heights and
> being around dangerous moving machinery or large bodies of

water.  He should not be required to perform commercial driving
or drive automotive vehicles or machinery.  The claimant can
perform simple routine tasks requiring no more than short, simple
instructions with simple work-related decision making and few
work place changes.   He can have occasional contact with
supervisors and co-workers and should have no contact with
members of the general public.

(R. 20).  The ALJ concluded that despite plaintiff's allegations of an inability to work

due to his impairments, plaintiff stated on September 29, 2009, that he "maintains a

relationship with one friend who sees (sic) maybe once a month; he is a member of

the American Legion and local HAM Club; he plays video games at home; maintains

personal hygiene; has no problem with activities of daily living; and he worked from

home prior to applying for disability" (R. 21).  The ALJ found these activities to be

"demonstrative of [plaintiff's] current physical and mental abilities and contradictory

to the alleged severity of limitations" (*Id.*).  The ALJ found that plaintiff's attempts

to "find work undoubtedly contradict his current allegations of a total disability" (*Id.*).

The ALJ further stated that the evidence "reveals [plaintiff] consumes copious

amounts of alcohol on occasion, which would merely exacerbate his symptoms of

depression" (*Id.*).

In making the above findings, the ALJ took evidence out of context and

selectively considered other evidence.  For example, the ALJ references a treatment

note by Dr. Whitworth, psychologist, from January 18, 2007, to support the

conclusion that plaintiff is consuming copious amounts of alcohol (R. 21, 506, 514). The court notes that this is almost three years before plaintiff's alleged onset of disability of November 23, 2009.  More importantly, plaintiff's treatment notes over the next four years contain repeated statements that plaintiff is not drinking or has little alcohol use (R. 387, 402, 429, 467, 681, 694, 721-722).  Additionally, the ALJ's finding that plaintiff's attempt to find work contradicts his alleged disability is directly rebutted by plaintiff's testimony that when he applied for unemployment benefits, he was denied because his disability was considered too substantial to sustain employment (R 60-61).

The ALJ's other findings appear to be substantially taken from Dr. Keyes September 28, 2009, notes.  However, those notes contradict the ALJ's findings by documenting that plaintiff has decreased social contact and no longer attends meetings of the American Legion or local HAM club because of increased anxiety (R. 643).  Dr. Keyes' notes further state that plaintiff was assigned to work from home because he had a flashback when pulled over by a police officer for speeding (R. 647).  Dr. Keyes documented that plaintiff was experiencing suicidal and homicidal ideation (R. 645).  Dr. Keyes also found that due to post-traumatic stress disorder, plaintiff's "insufficient mood management skills (irritability, anhedonia) and thought management skills (decreased concentration, intrusive thoughts) have reduced his

12

social and industrial capacity" (R. 648).  Dr. Keyes assigned plaintiff a GAF of 49 (R. 647-648) – indicating serious symptoms or any serious impairment in social, occupational, or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 35 (2000).

On May 5, 2011, plaintiff saw Dr. O'Hanlon at the V.A. psychiatry clinic in Birmingham, AL (R. 721-723).  Dr. O'Hanlon documented that plaintiff reported being "substantially worse" (R. 721).  Dr. O'Hanlon's notes indicate that plaintiff's flashbacks had increased (*Id.*).  Plaintiff was reported as mobile in his sleep, anergic, inactive, and isolative (*Id.*).  Plaintiff reported that he cannot financially afford "to do ham radio" but would like to work on ham radios "if he could remember" (*Id.*).  Plaintiff also reported that "the wife is his memory," that he won't remember eating, and his wife monitors his medication (*Id.*).  Plaintiff reported suicidal ideation and continued to endorse episodes of amnesia (*Id.*).  Dr. O'Hanlon wrote that plaintiff appeared somewhat unkempt with depressed mood (R. 722).  Dr. O'Hanlon lowered plaintiff's GAF to 45– indicating serious symptoms or any serious impairment in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL, *supra* at 35.

The ALJ's findings are, therefore, not supported by substantial evidence. Notably, minimal daily activities do not render one capable of performing work.  *See*

*Venette v. Apfel*, 14 F.Supp. 2d 1307, 1314 (S.D. Fla. 1998) (citing *Walker v. Heckler*,

826 F.2d 996 (11th Cir. 1987)).  Additionally, the Eleventh Circuit Court of Appeals

has stated that the opinion of a treating physician is to be given substantial weight in

determining disability.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir.

1986); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986); *Spencer on behalf of

Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).  Absent good cause to the

contrary, the Commissioner must accord substantial or considerable weight to the

treating physician's opinion. S*ee Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988);

*Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d

278, 279 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.

1986).  The ALJ has disregarded the treating physicians' notes and diagnoses

regarding plaintiff's PTSD and mood disorder and instead extracted selected portions

of the V.A. records in order to conclude that plaintiff was not disabled within the

meaning of the social security law (R. 21-24).

Plaintiff has had multiple treating physicians, Drs. Hogan, Keyes, O'Hanlon,

and Mcgregor, for PTSD and mood disorder through the Veterans Administration (R.

470-703, 721-723).  Notably, none of these physicians stated that plaintiff is

malingering.  The record evidence shows that plaintiff received an initial V.A.

disability rating of 30 percent and the rating was increased to 50 percent during the

relevant period (R. 714-720, 721-723). Testimony by plaintiff stated that at the time of the Social Security disability hearing plaintiff's V.A. disability rating was 70% (R. 45, 304). The Eleventh Circuit's case law is clear that "[a]lthough the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight." *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984), (citing *Olson v. Schweiker*, 663 F.2d 593 (5th Cir. 1981) and *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)).

At the time plaintiff filed his application, he was under active treatment at the Veterans Administration Medical Center for post traumatic stress disorder and a variety of physical problems. (R. 467-469, 470-703, 721-723). At the Veterans Administration's mental health facility, Dr. Keyes recorded that plaintiff's olfactory hallucinations began in June 2009 and sometimes preceded or followed a seizure (R. 645). Dr. Keyes records show that plaintiff complained of memory lapses during the seizures (R. 645). Plaintiff described difficulty remembering to take his medication and difficulty recalling recent conversations and activities (R. 645). Plaintiff's post-traumatic stress disorder symptoms included recurrent and intrusive distressing recollection of the event, including images, thoughts or perceptions, acting or feeling as if the traumatic event were recurring; and intense psychological distress and exposure to internal or external cues that symbolize or resemble an aspect of the

traumatic event (R. 645-646).  The Axis I DSM-IV diagnosis was post traumatic stress disorder, chronic and depressive disorder not otherwise specified (R. 647).  His Global Assessment of Functioning (GAF) score at the time of the treatment at the V.A. mental health facility was 49 (R. 648).  The V.A. determined there was reduced reliability and productivity on the part of plaintiff due to post traumatic stress disorder symptoms noting "the veteran [has] insufficient mood management skills (irritability, anhedonia) and thought management skills (decreased concentration, intrusive thoughts) have reduced his social and industrial capacity" (R. 648, 680).

Plaintiff's records show that in 2008 his Veterans Administration service connected disability rating was 30% (R. 715).  It was noted in the documents awarding the 30% service connected disability that plaintiff was permanently disabled because of an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (R. 715).  These records also reflect that plaintiff is not able to work with or near others (*Id.*) which is directly contrary to the ALJ's finding that plaintiff could work in an environment that includes occasional contact with co-workers and supervisors (R. 20).  The ALJ gave slight consideration to the 30% Veterans Administration disability award finding it consistent with a conclusion that plaintiff is not and was not disabled under the Social Security Act (R. 18).  The ALJ's analysis, however, did not take into consideration that by October 21,

2010, plaintiff's Veterans Administration disability award was increased to 50% based on post-traumatic stress disorder (R. 717-718). The records at that time show that he had been hospitalized for 5 days in August 2005, had required extensive convalescent leave through 2006 due to impaired judgment and that he continued to experience significant occupational limitations despite medications and out-patient treatment. Plaintiff was noted to have a "definite" social/industrial impairment at 50% permanent disability (R. 718). Additionally, evidence from plaintiff at the hearing indicated that plaintiff's current V.A. service connected disability rating was raised to 70% (R. 45, 304).

Plaintiff's office treatment notes from his 2011 visit with Dr. O'Hanlon at the V.A. psychiatric clinic contain information from plaintiff's wife that plaintiff was substantially worse, that his memory was poor, that he did not remember eating, that plaintiff's wife had to monitor medications and that plaintiff had an increase in flash backs all associated with post traumatic stress disorder (R. 721). Some days plaintiff's wife had to remind him to eat (*Id.*). Plaintiff reported that he had recent suicidal thoughts (*Id.*). The psychiatric notes indicate that plaintiff was a moderate risk for suicide (*Id.*). Plaintiff's GAF in 2011 was lowered to 45 – a finding consistent with moderately severe to severe psychological problems. (R. 722). See DSM IV, at 35. There is no indication that the ALJ considered this evidence, as well

17

as the increases in plaintiff's V.A. disability rating, changes in his GAF, or recent notes from his treating physicians.

The ALJ's opinion is therefore against the weight of the evidence and the ALJ failed to apply the proper legal standards. Accordingly, the decision of the Commissioner is hereby **REVERSED**. The case is hereby remanded for the ALJ to properly consider the plaintiff's V.A. disability rating and properly evaluate the negative impact of plaintiff's post-traumatic stress disorder on his ability engage in substantial work activity.

**DONE** and **ORDERED** this 4th day of December 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE